NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Alex VALENTI and Kyle VALENTI, a minor, by his parents and natural guardians, James and Laura VALENTI,<br><br>       Plaintiffs,<br><br>v.<br><br>MARRIOTT INTERNATIONAL, INC., et al.,<br><br>       Defendants. | Civ. No. 10-0758<br><br>OPINION & ORDER |

THOMPSON, U.S.D.J.

INTRODUCTION

This matter comes before the Court upon Defendants Marriott International, Inc., Marriott Ownership Resorts, Inc., and Marriott Ownership Resorts, Inc, d/b/a Marriott Vacation Club International's (collectively, "Marriott" or "Defendants") Motion to Dismiss [docket # 19]. Plaintiffs Alex and Kyle Valenti oppose the motion [24]. The Court has decided the motion upon consideration of the parties' written submissions, without holding oral argument, pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion will be deferred (denied without prejudice to Defendants' ability to renew the motion) until the completion of factual discovery.

BACKGROUND

Plaintiffs' Complaint alleges the following. In March 2009, the Valenti family—James and Laura and their sons, Alex and Kyle—booked a resort vacation at Marriott's Aruba Surf Club located in Aruba. (Compl. ¶ 12) [1]. They left their New Jersey home for Aruba on June 23, 2009. (*Id.* at ¶ 13.) While at Marriott's Aruba Surf Club, they made use of the club's

1

beachfront premises and the beach and services provided by Marriott on the beach, including reserved chairs, towels, security, food, and drinks. (*Id.* at ¶ 14.) On June 24, Marriott employees or agents encouraged the Valentis to take part in amusement activities provided by local vendors operating on the beach. (*Id.* at ¶ 15.) Following this suggestion, Kyle and Alex booked a speed-boat tube ride, in which participants ride on an inflatable tube towed at high speeds behind a small boat. (*Id.* at ¶¶ 16–17.)

During the ride, the operator of the boat made a sharp turn that caused the towed inflatable tube to crash into a moored boat, throwing Kyle, Alex, and a third rider from the tube. (*Id.* at ¶ 19.) Kyle was thrown over the moored boat and landed forcefully in the water, causing him injuries. (*Id.* at ¶ 21.) Alex and the other rider collided with the moored boat; Alex suffered serious injuries and was knocked semi-unconscious. (*Id.* at ¶¶ 22–23.) Kyle swam to his brother, held his head above water, and helped him back into the tube, which was then towed to shore. (*Id.* at ¶ 23.) Alex was hospitalized in intensive care in Aruba for four days, where he was treated for internal and external injuries including a broken arm, broken ribs, fluid in his lungs, lacerations to his liver, and damage to his kidneys. (*Id.* at ¶¶ 24–25); (Opp'n Br. 17). When his condition worsened, he was airlifted to a trauma hospital in Florida for further treatment. (Compl. ¶ 26.) He remained in the intensive care unit of the Florida hospital for sixty days, during which he underwent several more surgeries and procedures, including dialysis, transfusions, and removal of his right kidney. (*Id.* at ¶¶ 27–28); (Opp'n Br. 17.) When he was released from the hospital in Florida, he returned to New Jersey where he underwent an additional sixty days of physical therapy and follow-up treatments. (Opp'n Br. 17.) Some of his injuries may be permanent. (Compl. ¶ 28.)

Plaintiffs filed this lawsuit on February 16, 2010 [1]. The Complaint alleges that the Defendants knew or should have known of the risks of the tube ride and that the vendors were

2

not competent and able to provide a safe ride, (*id*. at ¶¶ 30–31), yet Defendants took no reasonable steps to stop the vendors from offering the ride, failed to warn resort guests of the dangers (and, in fact, encouraged participation), and generally permitted the unsafe attractions to remain on a beach area that the Plaintiffs claim was, or appeared to be, Defendants' property, (*id*. at ¶¶ 30–34.)  Plaintiffs seek compensation for the medical costs, pain and suffering, and emotional distress suffered by Alex and Kyle.

Defendants now move to dismiss the Complaint based on *forum non conveniens* because the allegedly negligent conduct occurred in Aruba, the operative facts, witnesses, and evidence are in Aruba, and Aruba provides an adequate alternative forum for the litigation.  Defendants also argue that Plaintiffs have failed to join necessary parties.

## ANALYSIS

### A. Legal Standard

Generally, a plaintiff's choice of forum should not be disturbed.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981).  However, "a district court may dismiss an action based on *forum non conveniens* if 'an alternative forum has jurisdiction to hear the case,' and trial in the plaintiff's chosen forum 'would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems' . . . ."  *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 294–95 (3d Cir. 2010) (quoting *Piper Aircraft*, 454 U.S. at 241).  Under the established test for a *forum non conveniens* motion, a district court must (1) decide "whether an adequate alternative forum exists to hear the case," (2) "evaluate the amount of deference due to the plaintiff's choice of forum," and (3) "consider and balance the private and public interest factors" set forth in the Supreme Court's decision in *Gulf Oil*

*Corporation v. Gilbert*, 330 U.S. 501 (1947). *Id*. at 295 (internal quotations and citations omitted). "The defendant bears the burden of persuasion at each stage of this analysis . . . ." *Id*.

*Gilbert*'s "private factors" concern the interests of the litigants, whereas the "public factors" address the convenience of the forum. *Piper Aircraft*, 454 U.S. at 241 (citing *Gilbert*, 330 U.S. at 508-09). The private interest factors include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert,* 330 U.S. at 508. The public interest factors include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n.6 (quoting *Gilbert,* 330 U.S. at 509). We now apply this framework to the case at hand.

### B. Existence of an Adequate Alternative Forum

Defendants argue that the proper forum for this case is Aruba and that the Aruban legal system is adequate to hear Plaintiffs' claims. Plaintiffs counter that the remedy available in Aruba is unsatisfactory. (Opp'n Br. 21.) We find that the Defendants have carried the burden of demonstrating that Aruba is an adequate alternative forum.

"Two conditions must be satisfied to meet this adequacy requirement: (1) the defendant must be amenable to process in the alternative forum, and (2) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff appropriate redress." *Kultur Int'l Films Ltd. v. Covent Garden Pioneer, FSP, Ltd.*, 860 F. Supp. 1055, 1063 (D.N.J. 1994) (citations omitted).

Plaintiffs concede that Defendants are amenable to process in Aruba, but they argue that Aruba is inadequate because the remedy available is "clearly unsatisfactory." (Opp'n Br. 20 (quoting *Piper*, 454 U.S. at 254 n.22).) Specifically, they note that they will not be afforded a jury in Aruba, cases can take up to two years to try and another possible two years on appeal, and there is no system of pretrial discovery. (Opp'n Br. 22 n.6 (citing Brown Aff., Mot. to Dismiss Ex. C [19-6]) ("Brown Aff.").) Plaintiffs also contend that the remedy available in Aruba will be "negligible at best" and will not even cover the costs of prosecuting the case so far from Plaintiffs' home forum of New Jersey. (Opp'n Br. 21.) In part, this is because punitive damages are not available in Aruba, and because Aruba's "immaterial damages," which function similarly to punitive damages, will likely be limited. (*See Id.*)

Despite Plaintiffs' concerns, we do not believe that the differences between the legal systems in Aruba and New Jersey render the Aruban forum inadequate or incapable of providing a satisfactory remedy. Defendants have produced an affidavit demonstrating that Aruba has a fully-functioning court system and that Plaintiff's cause of action would be cognizable as a tort claim (Brown Aff. ¶¶ 35–39) [19-6]. Several other courts have found Aruba to be an adequate forum for litigating tort cases. *See, e.g., McCrann v. RIU Hotels S.A.*, 2010 WL 5094396, at \*6 (S.D.N.Y. 2010) (finding that Aruba was acceptable forum for litigating negligence tort claim despite limited pretrial discovery and limited damages); *Vlasic v. Wyndham Intern., Inc.,* 451 F. Supp. 2d 1005, 1008 (C.D. Ill. 2006) (same).

Plaintiffs might believe they have a greater chance of recovery in a U.S. District Court, but a remedy is not inadequate merely because it is less favorable to the plaintiff than the remedy in the chosen forum. *Piper Aircraft*, 454 U.S. at 250. Moreover, the differences Plaintiffs cite are immaterial. Courts have found that the absence of trial by jury—a common feature of civil law systems—does not make a forum inadequate. *See, e.g., Snee v. Sunrise Prop. Ltd.*, 2009 WL

5

2163179, at *4 (S.D. Fla. 2009) (finding that "the absence of a right to a jury trial . . . will not prevent dismissal"); *GreenEarth Cleaning, L.L.C. v. Collidoue Invest France*, 2009 WL 1766716, at *3 (W.D. Mo. 2009) (finding France to be an adequate forum despite absence of juries); *MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 253 (S.D.N.Y. 1999) (finding that absence of civil juries does not render alternative forum inadequate). Nor are we moved by the possibility that a trial in Aruba may take up to two years with another two years for an appeal. The delays possible in Aruba may not be substantially longer than those faced in this district, and certainly, they are not so long as to preclude a satisfactory remedy.

Aruba's limited pretrial discovery system also does not render it an unacceptable forum. Although Aruba has no system of pretrial discovery equivalent to that in our courts, parties are nevertheless "obligated to present the facts that are important" for the court to render a decision, and parties "can request that the court compel the other party to produce documents . . . ." (Brown Aff. ¶¶ 27, 28) [19-6]. Courts have found that "[d]iscovery mechanisms that are not identical to those in the United States do not render an alternative forum inadequate." *Vivendi S.A. v. T-Mobile USA, Inc.*, 2008 WL 2345283, at *11 (W.D. Wash. 2008); *see also*, *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 659 (S.D. Tex. 2003) ("Neither discovery limitations nor the lack of a jury trial in a foreign forum makes that forum inadequate.").

Finally, Plaintiffs' concerns about the possible limitations on punitive damages are similarly immaterial. Courts have found that the availability of punitive damages is not a requisite to a satisfactory recovery. *See, e.g., de Melo v. Lederle Labs.*, 801 F.2d 1058, 1061 (8th Cir. 1986) (finding Brazil to be adequate forum despite absence of punitive damages); *Boonma v. Bredimus*, 2005 WL 1831967, at *3 (N.D. Tex. 2005) (finding Thailand to be adequate forum despite absence of punitive damages); *Warter v. Boston Secs. S.A.,* 380 F. Supp. 2d 1299, 1309

6

(S.D. Fla. 2004) (finding Argentina to be adequate forum despite absence of punitive damages). Moreover, Aruba does permit recovery of "immaterial damages," which appear to serve a similar role to punitive damages even if they are generally more limited. (*See* Brown Aff. ¶ 59.) In any event, it is doubtful that the allegations set forth in the Complaint would support a claim for punitive damages, which requires evidence of "reckless, callous, intentional or malicious conduct." *See Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006).

Therefore, we conclude, as have other courts in similar situations, that Aruba is an adequate alternative forum for litigating Plaintiffs' tort claims.

### C. Deference to Plaintiff's Choice of Forum

"Ordinarily, great deference is accorded a plaintiff's choice of forum . . . ," *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) (citing *Piper*, 454 U.S. at 255), and when a plaintiff chooses his home forum, "it is reasonable to assume that this choice is convenient," *Piper*, 454 U.S. at 255–56. However, a "citizen's forum choice should not be given dispositive weight," and "dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." *Piper*, 454 U.S. at 256 n.23. Rather, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Id.* Accordingly, we grant great deference to the Valentis' decision to sue in their home forum, but we must still balance the private and public interest factors to determine which forum is more convenient.

### D. Private Interest Factors

As stated earlier, the private interest factors the Court must consider include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make

7

trial of a case easy, expeditious and inexpensive." *Gilbert,* 330 U.S. at 508. We find that these factors cut considerably in favor of the Defendants' position that litigating this matter in New Jersey is less efficient and that Aruba is the more convenient forum.

Both parties focus their attention on the access to evidence and availability of and cost of obtaining witness testimony, but they sharply disagree over where the key evidence is located. Plaintiffs note that the matter as it now stands involves four plaintiffs and two defendants, all of whom are United States citizens. (Opp'n Br. 1.) The Plaintiffs are all residents of New Jersey, the third rider on the tube ride is a resident of New Jersey, and the two current Marriott Defendants are U.S. citizens registered in New Jersey as foreign profit corporations. (*Id.*) Focusing on the negligence of the boat driver, Plaintiffs center their argument on the "magnitude of having <u>all</u> occupants of the inflatable tube ride readily available in the State of New Jersey for discovery and trial." (Opp'n Br. 18) (emphasis in original). In addition, Plaintiffs argue that the majority of the medical records are located in the United States because Alex spent only four days in the hospital in Aruba, but another 120 days receiving treatment and physical therapy in Florida and New Jersey. Finally, they add that Alex's family can best provide evidence concerning his pain and suffering and that it would be difficult for them to travel to Aruba because of schooling and employment.

The Defendants counter that Plaintiffs' arguments address only two pieces of the puzzle—the negligence of the boat driver and the damages suffered by one of the Plaintiffs—while ignoring the key issue of Marriott's liability for the actions of the third-party boat driver. (Reply Br. 4.) Defendants' liability is based on the theory that Marriott, through its employees and agents, is liable for encouraging the dangerous activity, failing to warn of the danger, and generally permitting the unsafe attractions to remain on the beach area. Defendants argue that resolving these issues necessarily requires testimony from, among others, on-site employees

8

charged with the day-to-day operations of the Aruba Surf Club, beach vendors, owners and operators of the boat, and other eyewitnesses. (Mot. to Dismiss 14–15); (Reply Br. 7–8).

We agree that Plaintiffs' brief focuses too narrowly on the negligence of the boat driver and Alex's damages. Even if these two issues could be proved solely by the Valentis' testimony and medical records located in New Jersey, Plaintiffs would still face the not insignificant hurdle of being required to show that Marriott is liable for the boat driver's negligence. This appears to be the central issue in the case, and it is an issue that cannot be resolved easily with the evidence that would be accessible in this forum. Defendants have identified several potential witnesses who reside in Aruba whose testimony would be key to the issue of Marriott's liability. (Mot. to Dismiss 14–15, 17–19.) These individuals are unlikely to be amenable to process in New Jersey, and even their voluntary attendance would be costly. Moreover, in order to address the claim that the beach is or appeared to be the property of Defendants, a viewing of the premises might be necessary. For these reasons, we find that Defendants have adequately shown that the private interest factors weigh in favor of Aruba as the more convenient forum.

We are not unsympathetic to Plaintiffs' claims that the costs to them of litigating in Aruba would be substantial. However, we believe that it is too early to know what evidence will be required and which witnesses will be used. Thus, we cannot say which party would bear the greater burden of litigating in which forum

### E. Public Interest Factors

As stated previously, the public factors the court must consider include: "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in

9

an unrelated forum with jury duty." *Piper Aircraft,* 454 U.S. at 241 n.6 (quoting *Gilbert,* 330 U.S. at 509). These factors cut somewhat in favor of Aruba being the proper forum for this matter.

The first factor, administrative difficulties flowing from court congestion, does not cut in either direction because we are unable to say whether this district faces more congestion than the courts in Aruba. The second factor (the localized interest of this forum) and the fifth factor (the burden on a jury) are also not dispositive, although they point somewhat toward Defendants' position. In evaluating these factors, "the district court must 'consider the locus of the alleged culpable conduct . . . and the connection of that conduct to plaintiff's chosen forum.'" *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988) ("Lacey I") (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)). On the one hand, there is certainly a connection to this forum: Plaintiffs are residents of New Jersey, a portion of Alex's treatment occurred in New Jersey, and New Jersey has an interest in protecting its citizens and deterring misconduct by entities that are registered, advertise, and conduct business in New Jersey. However, in this case, the allegedly culpable conduct is the Defendants' actions in Aruba, not anything related to Marriott's business in New Jersey or Alex's treatment in New Jersey. Because Plaintiffs' claims relate entirely to conduct in Aruba, we find that the public interest factors point more toward Aruba as the more convenient forum. *See Hoffer v. Infospace.com, Inc.*, 102 F. Supp. 2d 556, 576 (finding venue improper in New Jersey where "a substantial amount, if not all, of the alleged culpable conduct occurred in [a foreign jurisdiction], not New Jersey . . .").

Finally, although not fully briefed, it appears likely that Aruban law would govern this case. Under New Jersey's conflict of law rules, which we must apply when the basis for our jurisdiction is diversity of citizenship, "the law of the [jurisdiction] that has the most significant connections with the parties and the action applies." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511,

527 (D.N.J. 1998) (citing *Gilbert Spruance Co. v. Pennsylvania Mfrs.' Assn. Ins. Co.*, 629 A.2d 885, 888 (N.J. 1993)).  Based on our analysis above, we find it likely that Aruban law would apply because of Aruba's significant connection to this action.  Thus, the third and fourth public interest factors suggest that this matter should be litigated in Aruba before judges familiar with Aruban law.

### F. Conclusion

Having balanced the private and public interest factors, we find that Aruba provides an adequate forum for resolution of this dispute and may, in fact, be the more convenient forum.  However, given the strong deference we must accord to Plaintiffs' choice of forum and the incomplete nature of the factual development at this stage, we believe it would be premature to grant the motion or deny it with prejudice.  Accordingly, we will deny the motion without prejudice to Defendants' ability to renew the motion at a later date.  We expect that the parties will continue to engage in factual discovery, identifying the witnesses and evidence that would be required at trial.  Once the parties gather this information, the Court will be in a better position to assess whether the convenience of trying this case in Aruba should outweigh the deference owed to Plaintiff's choice of forum.

Finally, we will not dismiss the case for failure to name necessary parties because we find that argument similarly premature.  Plaintiffs assert claims directly against Marriott for failure to warn or protect its guests from a dangerous condition existing on the beach.  As the case now stands, it is too soon to know if these claims could be resolved without implicating the concerns of Fed. R. Civ. P. 19.  This decision too remains open to reconsideration pending further factual discovery.

## CONCLUSION

For the reasons above, IT IS on this 10th day of March, 2011,

ORDERED that Defendants' Motion to Dismiss on the grounds of *forum non conveniens* [docket # 19] is DENIED without prejudice.

<em>/s/ Anne E. Thompson</em><br>
ANNE E. THOMPSON, U.S.D.J.